# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2010

No. 09-40768

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAIME IBARRA-LUNA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In *United States v. Morales-Sanchez*, we held that a district court must always "*correctly* calculat[e] the applicable Guidelines range" before imposing a sentence.[1]  Today we address whether a sentence may be upheld if an error in the calculation is shown to be harmless.  We hold that under the discretionary sentencing regime of *Booker* and progeny,[2] the harmless error doctrine applies

---

[1] 609 F.3d 637, 641–42 (5th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007)).

[2] *United States v. Booker*, 543 U.S. 220 (2005); *see also Gall*, 552 U.S. 38; *Rita v. United States*, 551 U.S. 338 (2007).

No. 09-40768

only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing. On the facts before us, we conclude that this high hurdle has not been cleared and remand for resentencing.

I

Defendant-appellant Jaime Ibarra-Luna ("Ibarra") pleaded guilty to illegally reentering the United States after having previously been deported.[3] Ibarra was born in Mexico in 1973 and first entered the United States illegally when he was a teenager. In 2003, he pleaded guilty to a Texas state felony offense of delivery of cocaine and was subsequently deported to Mexico. Five days after being deported, Ibarra reentered the country without permission and returned to his family in Texas.

In April 2008, Ibarra was arrested again and charged with murder. Although the record is sparse on details, it appears that Ibarra and a companion were involved in a high-speed car chase in which Ibarra fired a number of shots at another vehicle, one of which struck and killed the driver. Ibarra pleaded guilty and received a 22-year sentence, which he is currently serving in state custody.[4]

After the state proceedings were completed, Ibarra pleaded guilty in this case. Although Ibarra's illegal reentry is a separate crime from the murder and

---

[3] *See* 8 U.S.C. §§ 1326(a)–(b).

[4] Officers investigating Ibarra's residence also discovered a small quantity of marijuana, but the marijuana charges were dismissed as part of the plea negotiations over the murder charge.

No. 09-40768

the past drug offense, each of the prior convictions raised significant issues bearing on his sentence.


A

The first disputed issue at Ibarra's sentencing hearing concerned the effect of his 2003 drug conviction, which the criminal information and plea agreement identify as "delivery of cocaine, less than 1 gram."[5]  Relying on a police report alleging that Ibarra sold a quantity of cocaine to an undercover officer, the Presentence Report (PSR) recommended that Ibarra receive the 12-level sentence enhancement for a prior felony drug trafficking offense.[6]

The district court rejected this recommendation because, as we have previously held, a conviction for delivery of a controlled substance did not qualify as a drug trafficking offense under the Guidelines in effect at the time of Ibarra's crime.  Applying the categorical approach of *Taylor v. United States*,[7] we look only to the elements of the prior offense, the charging document, and the jury instructions or plea agreement.[8]  We thus consider only those facts that were essential to the conviction; we may not assume the truth of any other facts, such

---

[5] *See* TEX. HEALTH & SAFETY CODE §§ 481.112(a)–(b) ("[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.").

[6] *See* U.S.S.G. § 2L1.2(b)(1)(B) & cmt. n.1(B)(iv).

[7] 495 U.S. 575, 602 (1990).

[8] *United States v. Garza-Lopez*, 410 F.3d 268, 273 (5th Cir. 2005).

No. 09-40768

as allegations in the police report[9] or any description given in the PSR.[10] Under the Guidelines in effect during Ibarra's crime, arrest, and indictment, a "felony drug trafficking offense" required the defendant to possess the drugs or to cause them to be transferred.[11]  But Texas law defines delivery of a controlled substance to include "offer[s] to sell," which reaches offers where the defendant is not yet in possession of the drugs and the transaction is never consummated.[12] That is, "the [Texas] language encompasses both conduct that does constitute a drug trafficking offense (transferring cocaine) and conduct that does not (offering to sell cocaine)."[13]  Consequently, Ibarra's agreement to plead guilty to a charge of "delivery of cocaine" does not establish the facts necessary to impose a drug trafficking enhancement under the applicable Guidelines.[14]

We pause to note that the Guidelines have since been amended to add "offers to sell" to the definition of a felony drug trafficking offense, closing this

---

[9] *Shepard v. United States*, 544 U.S. 13, 16 (2005).

[10] *United States v. Gonzales*, 484 F.3d 712, 714 (5th Cir. 2007); *Garza-Lopez*, 410 F.3d at 273–74.

[11] U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2007); *see United States v. Morales-Martinez*, 496 F.3d 356, 358 (5th Cir. 2007); *Gonzales*, 484 F.3d at 714–15.

[12] TEX. HEALTH & SAFETY CODE § 481.002.

[13] *Morales-Martinez*, 496 F.3d at 358.

[14] The charging document for the 2003 offense nominally alleges that Ibarra "knowingly delivered by actual transfer," "by constructive transfer," *and* "by offering to sell." Notwithstanding this language, a conviction would require the government to prove only one of these allegations, not all three, and therefore we cannot say whether Ibarra's guilty plea was an admission to all three allegations or only to the allegation of offering to sell. *See Morales-Martinez*, 496 F.3d at 358–61; *accord United States v. Fuentes*, 245 F. App'x 358 (5th Cir. 2007); *cf.* Orin Kerr, *The Strange Practice of Indicting in the Conjunctive*, THE VOLOKH CONSPIRACY (Sept. 25, 2009, 1:23 PM), http://volokh.com/posts/1253899387.shtml.

No. 09-40768

apparent loophole.[15] The government did not cross-appeal Ibarra's sentence, and so we do not consider whether the amended Guidelines would call for a longer sentence or whether the new Guidelines could be applied retroactively to Ibarra's conduct.[16]

After determining that Ibarra's drug conviction did not support the twelve-level enhancement, the district court proceeded to consider two alternatives. The government argued that the 2003 conviction qualifies as "an aggravated felony" and is therefore subject to an eight-level enhancement.[17] Ibarra's counsel disagreed and maintained that the drug conviction falls into the residual category for "any other felony," receiving only a four-level enhancement.[18] The district court applied the eight-level enhancement. After sentencing adjustments not at issue here, the court calculated a Guidelines range of 12 to 18 months.

The government now concedes that applying the eight-level enhancement was error, and Ibarra should instead have received only a four-level enhancement. This was error because an "aggravated felony" must be punishable as a felony under the Controlled Substances Act.[19] The government

[15] *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (2008).

[16] *See Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008). *But see United States v. Castillo-Estevez*, 597 F.3d 238, 241 (5th Cir. 2010) (holding that retroactive application of amended Guidelines provision is not plain error).

[17] U.S.S.G. § 2L1.2(b)(1)(C) & cmt. n.3(A).

[18] *Id.* § 2L1.2(b)(1)(D).

[19] *Id.* § 2L1.2 cmt. n.3(A) (adopting definition of "aggravated felony" from 8 U.S.C. § 1101(a)(43), which in turn incorporates 18 U.S.C. § 924(c), which includes "any felony punishable under the Controlled Substances Act"); *Lopez v. Gonzales*, 549 U.S. 47, 50 (2006) (holding that conduct designated as a felony under state law but as only a misdemeanor under

5

No. 09-40768

concedes that a mere offer to sell, without evidence of possession or transfer, is tantamount to solicitation and is not proscribed by the Controlled Substances Act.[20]  The correct Guidelines range was 6 to 12 months, not 12 to 18 months.

B

The other significant dispute at Ibarra's sentencing hearing concerned his recent murder conviction.  Even before it finished calculating Ibarra's Guidelines range, the district court advised the parties that it thought the state murder sentence was too lenient and that it planned to compensate by imposing an above-Guidelines sentence for the federal immigration charges.

The district court understood the murder to involve "chasing some guy down the highway . . . shooting at -- out the window until he kills a guy in the middle of the road."  Ibarra's attorney did not dispute this characterization, instead asking for leniency based on personal factors.  Although Ibarra received a 22-year state sentence, the district court explained that it did not "really know how much time he'll do" because Texas allows some offenders to be released after serving as little as half of the assigned sentence.  The court thus surmised that Ibarra "might serve [only] 11 years for killing this guy."

Viewed against this backdrop, the district court determined that a sentence in the 12 to 18 month range—what it mistakenly believed to be the applicable Guidelines range—would not satisfy the Section 3553(a) factors.[21]

---

the Controlled Substances Act does not qualify as an aggravated felony); *United States v. Estrada-Mendoza*, 475 F.3d 258, 260–61 (5th Cir. 2007) (same).

[20] *See United States v. Rivera-Sanchez*, 247 F.3d 905, 908–09 (9th Cir. 2001) (en banc).

[21] *See* 18 U.S.C. § 3553(a).

No. 09-40768

The court announced that, in order "to be certain that Mr. Ibarra doesn't return to society in this [c]ountry," a longer sentence would be necessary.  Stating that it had considered Ibarra's "convict[ion] of a murder of this type, degree, and the circumstances behind it, as well as just the offense itself," the court imposed a 36-month sentence and ordered that it run consecutive to the state murder sentence.  The court gave no further indication of precisely how it arrived at 36 months as the appropriate term of imprisonment.

## II

We have applied the harmless error doctrine in several post-*Booker* cases.[22]  In each, the district court considered the correct Guidelines range and rejected it on Section 3553(a) grounds.[23]  We have not treated whether an error in calculating the sentence may be harmless.  We turn to the principles of *Booker* and progeny.

## A

It is established that a district court must consider the applicable Guidelines range.  Section 3553(a) lists the Guidelines range as one of seven factors that the court must consider when deciding what sentence to impose.[24]

---

[22] *See United States v. Duhon*, 541 F.3d 391, 396 (5th Cir. 2008); *United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008); *United States v. Tzep-Mejia*, 461 F.3d 522, 526 (5th Cir. 2006).

[23] In each case, the district court recognized some uncertainty over the proper Guidelines calculation and therefore proceeded to consider and reject *both* possible Guidelines ranges, including the correct range, in favor of a non-Guidelines sentence.  *Duhon*, 541 F.3d at 396; *Bonilla*, 524 F.3d at 655–657; *Tzep-Mejia*, 461 F.3d at 526–27.

[24] 18 U.S.C. § 3553(a)(4); *see Gall*, 552 U.S. at 50 n.6.

No. 09-40768

Indeed, the Supreme Court has instructed that, "as a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" in every case.[25]

For similar reasons, when a district court sentences outside the Guidelines range, it must explain on the record why the range would not serve the goals listed in Section 3553(a).[26]   This explanation is necessary "to allow for meaningful appellate review and to promote the perception of fair sentencing."[27] That is, review of sentencing decisions under an abuse-of-discretion standard requires that the district court "clearly articulate" how the Section 3553(a) factors apply to the facts of a particular case, because "[o]nly then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent."[28]

Treating the Guidelines as mandatory or failing to consider the Guidelines at all is reversible error.   Without attempting to identify the applicable Guidelines range, a district court cannot meet its obligation to explain why a sentence in that range would not be adequate.  We cannot find a frustration of this core statutory command to be harmless.

---

[25] *Gall*, 552 U.S. at 49.

[26] *Id.* at 51 (identifying "failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range" as a "significant procedural error").

[27] *See id.* at 50.

[28] *United States v. Taylor*, 487 U.S. 326, 336–37 (1988); *see also id.* at 342–43 (explaining in a Speedy Trial Act case that "the necessity for thorough appellate review require[s] that a district court carefully express its decision . . . in terms of the guidelines specified by Congress" and that failure to offer such an explanation constitutes an abuse of discretion).

No. 09-40768

B

Elaborating on these standards in *Gall*, the Supreme Court observed that a district court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range."[29]  In referring to both failure to calculate the Guidelines range and improperly calculating that range as a single form of procedural error, the Court thought them problematic for the same reasons.

As a result, an incorrect Guidelines calculation will usually invalidate the sentence, even when the district court chose to impose a sentence outside the Guidelines range.  Although it may well be that the same explanation the court gave for imposing a sentence outside the miscalculated range *could* also support a sentence outside the correctly calculated range, the harmless error doctrine requires the proponent of the sentence to convincingly demonstrate that the court actually *would* have followed the very same reasoning absent the error.[30] This is a heavy burden.[31]

That is not to say that it is not possible to show that the district court would unquestionably have rejected the correct Guidelines range for the very same reason it rejected the incorrect range.  This case provides one such example.  The district court explained that it was imposing an above-Guidelines sentence because it thought a sentence in the 12-to-18-month range was not long

---

[29] *Gall*, 552 U.S. at 51.

[30] *See, e.g.*, *Morales-Sanchez*, 609 F.3d at 641 (citing *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009)); *United States v. Tello*, 9 F.3d 1119, 1129–30 (5th Cir. 1993).

[31] *Delgado-Martinez*, 564 F.3d at 753 (5th Cir. 2009) (quoting *United States v. Langford*, 516 F.3d 205, 215–17 (3d Cir. 2008) ("[T]he improper calculation of the Guidelines range can rarely be shown not to affect the sentence imposed.")).

No. 09-40768

enough to prevent Ibarra from returning to society while he is still dangerous. Had the Guidelines range been correctly calculated, the range would have been 6 to 12 months. Yet if a sentence of 12 to 18 months is not long enough, then plainly a 6-to-12-month sentence also would not be long enough, for precisely the same reason that the district court gave. In these circumstances, the error may be harmless. But there is more.

C

Our past cases also make clear that a sentencing error may not be found harmless unless the proponent of the sentence "proffer[s] sufficient evidence to convince the appellate court that the district court would have imposed the same sentence, absent the error."[32] To satisfy that burden, the proponent "must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error."[33]

Even when the district court ultimately decides to impose a sentence outside the Guidelines range, an error in its Guidelines calculation may still taint the non-Guidelines sentence. For instance, the district court might settle upon a particular non-Guidelines sentence by doubling the maximum Guidelines range, or by starting with the Guidelines range and adding or subtracting a fixed number of years. In such cases it may be clear that the district court's reasons for rejecting a sentence in the Guidelines range are unaffected by the error, but

---

[32] *Tello*, 9 F.3d at 1130; *see also, e.g.*, *Delgado-Martinez*, 564 F.3d at 753.

[33] *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998).

No. 09-40768

the error nevertheless is not harmless because the district court would not have imposed the very same sentence.

The burden of showing that a particular sentence was not derivative of the Guidelines recommendation is a difficult burden if the district court fails to indicate why it selected a sentence of a particular length. It may be prudent when imposing a non-Guidelines sentence to state whether the magnitude of that sentence rests on factors independent of the Guidelines, thereby permitting a reviewing court to consider claims of harmless error.[34]

### III

We now turn to applying these principles to the facts before us. As we have explained, the calculation error in Ibarra's sentencing may not be excused as harmless error unless two requirements are met. First, the government must convincingly demonstrate that the district court would have imposed a sentence outside the correct Guidelines range for the same reasons it gave for imposing a sentence outside the miscalculated Guidelines range. Second, it must show that the 36-month sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation.

As noted earlier, we are convinced that the explanation the district court gave for imposing an above-Guidelines sentence would have led it to do so even if it had considered the correct Guidelines range. The district court clearly indicated than an above-Guidelines sentence was necessary because a sentence of 12 to 18 months was not sufficiently long to protect the public from further

---

[34] *Cf. Gall*, 522 U.S. at 50–51 (discussing the need for district courts to follow certain sentencing procedures "to allow for meaningful appellate review").

No. 09-40768

crimes by Ibarra or, given his status as a repeat offender, to promote respect for the law.[35]  Because the correct Guidelines recommendation of 6 to 12 months would have been even lower, an above-Guidelines sentence still would have been necessary for these same reasons.

We cannot state with the requisite certainty, however, that the district court would have imposed precisely the same sentence.  The district court did not indicate how it selected a sentence of 36 months, and it did not state whether this sentence was influenced by its Guidelines calculations or based instead on independent factors.  Notably, the district court was careful to insist that "I need to understand where he comes out on the Guidelines, and *then* make my variance," which suggests that, quite properly, the Guidelines recommendation affected the sentence it selected.[36]  We also note that, compared to the 12-to-18-month range the court did consider, the 36-month sentence it imposed is exactly double the Guidelines maximum and exactly triple the Guidelines minimum.

On these facts, the government has not met its burden to convincingly demonstrate that the court would have imposed the very same sentence if it had not made an erroneous calculation.  We must therefore VACATE Ibarra's sentence and REMAND to the district court for resentencing.[37]

---

[35] *See* 18 U.S.C. §§ 3553(a)(2)(A), (C).

[36] This statement admittedly is not conclusive, as it may be that the court insisted on first finishing the Guidelines calculation because this is the process prescribed by *Gall*.

[37] In light of this disposition, we do not reach Ibarra's arguments that his sentence was procedurally or substantively unreasonable.