# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 13, 2012

Lyle W. Cayce
Clerk

No. 11-10205

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

SEBASTIAN DELAGARZA,

Defendant–Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-55-3

Before REAVLEY, DAVIS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

This case is an appeal from the sentence imposed upon Defendant–Appellant Sebastian DeLaGarza in connection with his guilty plea for conspiracy to possess five hundred grams or more of methamphetamine with intent to distribute. The district court sentenced DeLaGarza to 150 months imprisonment. Because we find that the district court did not make sufficient factual findings, we VACATE and REMAND for resentencing.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10205

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2009, DeLaGarza met with undercover agents of the Drug Enforcement Administration ("DEA") in an attempt to purchase 100 pounds of marijuana.  Although he was unable to secure enough funds to complete the marijuana transaction, DeLaGarza mentioned that his cousin, Rogelio Estrada, could obtain large quantities of methamphetamine.  Two months later, undercover DEA Special Agent J. Gallo contacted DeLaGarza about purchasing two kilograms of meth, and DeLaGarza quoted Gallo a price of $40,000 per kilogram.  Shortly thereafter, a confidential informant ("CI") met with DeLaGarza and Estrada to negotiate the meth transaction and to obtain a sample of the drugs.  DeLaGarza then made arrangements with Gallo to complete the transaction.

On August 12, DeLaGarza told Gallo that Estrada would meet with the CI at a local motel, but that he would only sell one kilogram of meth at a time. Later that day, law enforcement officers, who had set up surveillance, observed Estrada and Oscar Tapia arrive at the motel.  The officers also observed Tapia adjusting something in his front waistband, which the CI later confirmed was a handgun.  Estrada opened the trunk of his car and showed the CI one kilogram of meth.  As the CI led Estrada and Tapia towards the motel room to complete the transaction, the officers approached the men.  Estrada fled on foot and was observed throwing a pistol into the bushes.  Estrada and Tapia were subsequently apprehended and placed under arrest.  Estrada admitted to purchasing the handgun, but explained that Tapia was carrying it when they arrived at the motel.

Although DeLaGarza was not arrested during the August 12 transaction, he was present at the motel, having arrived separately from Estrada and Tapia to observe the deal.  An agent observed DeLaGarza at the scene but was unable

to apprehend him when officers closed in on Estrada and Tapia.  DeLaGarza was arrested months later, after he, Estrada, and Tapia were indicted.

DeLaGarza pleaded guilty, without a plea agreement, to one count of conspiracy to possess five hundred grams or more of methamphetamine with intent to distribute.  A presentence investigation report ("PSR") was prepared for DeLaGarza, and it assessed a base offense level of 36 because the offense involved at least five hundred grams but less than one and one-half kilograms of methamphetamine.  *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(2).  Two levels were added because DeLaGarza's co-conspirators possessed a dangerous weapon when they met with undercover agents to conduct the methamphetamine transaction.  *See id.* at § 2D1.1(b)(1).  After a two-level reduction for acceptance of responsibility, *see id.* at § 3E1.1(a), the PSR calculated DeLaGarza's total offense level of 36.  That offense level, combined with his criminal history category of I, resulted in a Guidelines imprisonment range of 188 to 235 months.  *See id.* at ch. 5, pt. A.  DeLaGarza filed objections to the PSR, which the district court overruled.  The district court then departed downward from the Guidelines range and sentenced DeLaGarza to 150 months of imprisonment and five years of supervised release.  This appeal follows.

## II.  STANDARD OF REVIEW

DeLaGarza argues that the district court erroneously applied the dangerous-weapon enhancement laid out in Section 2D1.1(b)(1) of the Guidelines to him.  He asserts that the district court did so because it incorrectly applied the test for a defendant's personal, rather than vicarious, possession of a weapon.  "[A] district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error."  *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks omitted).  The Government asserts, however, that DeLaGarza failed to preserve this argument and that therefore, our review

No. 11-10205

ought to be for plain error. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009); *see also United States v. Girod*, 646 F.3d 304, 317 (5th Cir. 2011) (discussing the requirements of plain error). "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). In determining whether a defendant preserved error, our focus is on the "specificity and clarity of the initial objection." *Id.* at 273.

Section 2D1.1(b)(1) provides that the defendant's offense level be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The Government can prove possession in two ways: (1) showing that the defendant personally possessed the weapon, i.e., "showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant"; or (2) "when another individual involved in the commission of an offense possessed the weapon, . . . show[ing] that the defendant could have reasonably foreseen that possession." *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010). This latter proof is known as vicarious possession.

In his objections to the PSR, DeLaGarza stated that he had "no reason to know that a weapon would be present, as he was to have no involvement with the actual sale of the drugs. Because the presence of the gun was completely unforeseeable to [him], no enhancement for possession of a dangerous weapon should be assessed." Furthermore, at the sentencing hearing, DeLaGarza's attorney argued,

> The government's evidence makes it very, very clear that Mr. De La Garza was completely unaware of the presence of this gun. . . . I understand what the case law says about this. I understand that the case law says that, you know, it could be reasonably foreseeable that someone might bring a gun to a drug sale. But at some point, possession of a gun by a co-conspirator has to become so attenuated

4

and so separate from the co-conspirator that we can't hold the co-conspirator accountable for it.

In both his objections to the PSR and during his sentencing hearing, DeLaGarza's argument was that the presence of the handgun at Estrada and Tapia's sale to Gallo was not foreseeable to him. This objection was sufficiently specific and clear to put the district court on notice that the appropriate test was one of foreseeability. *See Neal*, 578 F.3d at 273; *cf. United States v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006) ("We have never required a party to express its objection in minute detail or ultra-precise terms.").

## III.  DISCUSSION

DeLaGarza specifically argues that the district court's findings of fact pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B) were insufficient to support the dangerous-weapon enhancement. In overruling DeLaGarza's objection to the imposition of the enhancement, the district court found

> The adjustment is to be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense. I'm sure you all read comment 3. It gives an example of clearly [im]probable, that the defendant was arrested at his residence and had an unloaded hunting rifle in his closet, something of that nature.
>
> The government, of course, bears the burden of proving by a preponderance of the evidence that the defendant possessed the weapon and may do so by showing the temporal and spatial relationship between the weapon, the drug trafficking activity, and the defendant, which suffices to establish that the defendant personally possessed the weapon. I'm citing from *U.S. v. Ruiz*, 621 F.3d 390 at keynotes 11 and 12; citing to *U.S. v. Cisneros-Gutierrez*, 517 F.3d 751, 764–65, 5th Circuit 2008.
>
> Once the government meets their burden, the burden shift[s] to the defendant to show it was clearly improbable that the weapon was connected to the offense.

> I think all the reasons pointed out by the government, including those contained in the presentence report, and just the nature of the drug trafficking activity here and the connection between the defendants involved in a conspiracy, again, set forth really in the presentence report clearly enough to where any reasonable inference would be drawn that the government has met their burden of establishing that the firearm was connected to the offense as required under 2D1.1.
>
> And I have not heard anything that convinces me it was clearly improbable that the weapon would be connected to the offense. So for all those reasons, I note the defense objection, I overrule the objection.

From this statement, it is clear that the district court was using the personal-possession test. *See United States v. Ruiz*, 621 F.3d 390, 396–97 (5th Cir. 2010) (stating and applying the personal-possession test); *Cisneros-Gutierrez*, 517 F.3d at 764–66 (same). This was the incorrect test to apply as it is also clear that DeLaGarza did not personally possess the gun.

The Government argues, however, that by expressly adopting the PSR and "all the reasons pointed out by the government," the district court implicitly found that DeLaGarza's co-conspirators' possession of a weapon was reasonably foreseeable to DeLaGarza. Though we have said that the district court may "make implicit findings by adopting the PSR[, t]his adoption will operate to satisfy the mandates of Rule 32 [only] when the findings in the PSR are so clear that the reviewing court is not left to 'second-guess' the basis for the sentencing decision." *United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994) (footnotes omitted). In this case, however, the PSR contained no assertion that Estrada and Tapia's possession of the weapon was reasonably foreseeable to DeLaGarza. Moreover, our review of the record indicates to us that the district court's reliance on the Government's reasoning was limited to its finding that the weapon was connected to the offense, not that the presence of a handgun at the

sale was reasonably foreseeable to DeLaGarza.  Therefore, we find that the district court applied the incorrect Guidelines standard in determining that the dangerous-weapon enhancement was warranted.

This finding does not, however, end our inquiry.  We must consider whether the application of the incorrect standard was nonetheless harmless.  To show harmless error, the Government has the "heavy burden," *United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010), of convincingly demonstrating that the district court (1) would have imposed the same sentence absent the purported error, and (2) that it would have done so for the same reasons.  *Id.* at 714.  In sentencing DeLaGarza, the district court determined that the Guidelines range of 188 to 235 months of imprisonment was too high and that a sentence of 150 months of imprisonment was appropriate in light of DeLaGarza's personal background, his lack of a criminal history, and the circumstances surrounding the offense of conviction.  The district court did not explain how it selected the 150-month sentence and it is unclear whether the Guidelines range influenced the sentence imposed.  Therefore, because the Government cannot convincingly demonstrate that the district court would have imposed the same sentence, the Government cannot show that the error was harmless.  *See Ibarra-Luna*, 628 F.3d at 718–19.  Accordingly, we VACATE DeLaGarza's sentence and REMAND for resentencing.  *See United States v. Hooten*, 942 F.2d 878, 881–82 (5th Cir. 1991); *Zapata-Lara*, 615 F.3d at 390–91.