# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11542

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ANTONIO AYALA–NUNEZ, also known as Antonio Nunez Ayala, also known as Antonio Munez Ayala,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-113-1

Before CLEMENT, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Antonio Ayala–Nunez argues that the district court plainly erred in sentencing him to 60 months' imprisonment. Ayala–Nunez makes two arguments on appeal. First, he asserts that the district court plainly erred in applying a 12-level sentence enhancement under Sentencing Guidelines § 2L1.2.[1] Second, he argues that the district court plainly erred in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S. Sentencing Guidelines Manual § 2L1.2 (U.S. Sentencing Comm'n 2015). This case involves issues relating to the 2015 version of the Sentencing Guidelines. Nothing in

## No. 16-11542

finding that he had previously committed an "aggravated felony." He argues that each error independently justifies that this court vacate his sentence.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Antonio Ayala–Nunez was born in Mexico and came to the United States at a young age. In June 2016, Ayala–Nunez pleaded guilty without a plea agreement to one count of illegally re-entering the country following his removal, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

This was not Ayala–Nunez's first interaction with the criminal justice system.[2] In July 2013, he was indicted for delivering a controlled substance in violation of Texas Health and Safety Code § 481.112(c) ("Delivery Offense"). Ayala–Nunez pleaded guilty, and he was sentenced to 24 months' deferred adjudication probation. Ayala–Nunez was placed into United States Immigration and Customs Enforcement ("ICE") administrative custody in October 2013. Following removal proceedings, an immigration judge ordered that Ayala–Nunez be removed to Mexico. He was removed in November 2013.

In January 2014, United States Customs and Border Patrol ("CBP") agents encountered Ayala–Nunez in Texas. He pleaded guilty to the offense of illegal entry and was sentenced to 90 days' imprisonment. He was subsequently removed to Mexico in April 2014. In January 2015, Dallas police arrested Ayala–Nunez and charged him in Texas state court with simple cocaine possession. Ayala–Nunez was convicted and sentenced to 2 years' imprisonment.

---

this opinion relating to the 2015 Guidelines should be construed to apply to subsequent versions of the Guidelines.

[2] In 2002, Ayala–Nunez was convicted for driving while intoxicated. He was convicted in 2005 for misdemeanor assault causing bodily injury to a family member. He was convicted in 2010 for misdemeanor assault causing bodily injury against a different family member. In 2013, he was arrested and later convicted for simple possession of cocaine.

No. 16-11542

On July 8, 2015, Ayala–Nunez's deferred adjudication probation sentences for his simple cocaine possession offense and his delivery offense were revoked. He was sentenced to 3 years' imprisonment in each case. He was also paroled into administrative ICE custody. Ayala–Nunez was then indicted in federal court in March 2016 for illegally re-entering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He pleaded guilty without a plea agreement. The district court ordered the preparation of a presentence report ("PSR") in July 2016.

The PSR recommended that a 12-level enhancement was appropriate because Ayala–Nunez had been convicted of delivery of a controlled substance—a drug trafficking offense under U.S.S.G. § 2L1.2. Paragraph 39 of the PSR specifically stated that Ayala–Nunez "was deported subsequent to the imposition of a sentence of probation; therefore 12 levels are added." *See* U.S.S.G. § 2L1.2(b)(1)(B). The PSR calculated an advisory Guidelines range of 51 to 63 months' imprisonment based on a Total Offense Level of 17 and a Criminal History Category of VI. The PSR identified the maximum statutory term of imprisonment as 20 years, based on 8 U.S.C. §§ 1326(a) and (b)(2).

In district court, Ayala–Nunez objected to the PSR.[3] He argued that the Government had not provided a certified copy of the judgment supporting the enhancement in paragraph 39 of the PSR.

During Ayala–Nunez's sentencing hearing, the Government provided defense counsel certified copies of the Delivery Offense. Defense counsel agreed that those certified copies supported paragraph 39's 12-level enhancement. The district court adopted the PSR's findings and calculations. When asked

---

[3] Ayala–Nunez also objected on the grounds that the Indictment did not allege a prior conviction under 8 U.S.C. § 1326(b). Because the Indictment did not allege a prior conviction, it charged only an offense under § 1326(a). He then asserted that his sentence exceeded the statutory maximum punishment for a § 1326(a) offense. He conceded, however, that this argument is foreclosed by *Almendarez–Torres v. United States*, 523 U.S. 224 (1998).

about the baseline for starting the sentencing determination, both parties agreed that the defendant's Base Offense Level was 17, Criminal History Category was VI, and the Guidelines range was 51 to 63 months.

The defense argued for a departure below the Guidelines range based on factors outlined in 18 U.S.C. § 3553(a). Counsel emphasized the young age when Ayala–Nunez moved to the United States, his lack of connection to Mexico, his personal and familial connections to Texas, his previous struggles with finding work in Mexico, and his concern with spending time with his elderly mother in Texas. Moreover, the defense highlighted that Ayala–Nunez had "never spent significant time incarcerated for his offenses prior to the time that he was sentenced in the underlying state case here in Texas that led to his discovery by ICE." Ayala–Nunez personally testified that he regretted his past mistakes, accepted responsibility, and requested a "lighter sentence."

The Government, however, focused on Ayala–Nunez's "long, dangerous criminal history representing a complete disrespect for the law." Given this criminal history and his repeated illegal entries into the United States, the Government emphasized that Ayala–Nunez had been given "a tremendous number of chances," so the sentence needed to be at the higher end of the Guidelines range in order to "promote respect for the law" and "deter further misconduct."

Ultimately, the district court concluded that a sentence of 60 months' imprisonment was appropriate. The court aimed "to make sure the sentence imposed promote[d] respect for the law, provide[d] just punishment, [and] deter[red] other people from doing this." The court expressed concern that people can too easily return to the United States illegally following deportation. The court also highlighted the "amount and seriousness" of Ayala–Nunez's prior convictions—he was someone "who is not just illegally here but who has been involved in some serious offenses." Ayala–Nunez had been "given

numerous chances" without receiving "very stiff sentences" for his prior offenses.

## II. JURISDICTION

This case involves a sentencing appeal in a criminal matter. The district court properly exercised jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to hear this direct, timely appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

Ayala–Nunez did not raise his objections in the court below. We review the two issues in this case for plain error. *See United States v. Medina–Anicacio,* 325 F.3d 638, 643 (5th Cir. 2003). Federal Rule of Criminal Procedure 52(b) provides that: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Plain-error review involves four prongs:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations, alterations, and internal quotations omitted).

No. 16-11542

## IV. DISCUSSION

**A.     The District Court Did Not Plainly Err in Applying a 12-Level Sentence Enhancement**

Ayala–Nunez received a 12-level sentence enhancement under U.S.S.G. § 2L1.2. He contends that the district court erred in calculating the sentence enhancement because the court treated a term of deferred adjudication that he received prior to a deportation as if it had been a sentence of imprisonment. We conclude that even if the district court erred, the court did not *plainly* err. The relevant provision of the Sentencing Guidelines and associated commentary is subject to reasonable dispute. No Fifth Circuit case law squarely addresses this issue. Because Ayala–Nunez's claim fails under the second prong of plain error review, we do not need to examine the remaining prongs.

### *1. Ayala–Nunez Did Not Affirmatively Waive His Objection to the 12-Level Enhancement*

The Government argues that Ayala–Nunez affirmatively waived his objection to the application of the 12-level enhancement to his sentence. The Government's argument proceeds as follows. Ayala–Nunez objected below to the PSR paragraph containing the 12-level enhancement. Ayala–Nunez's counsel subsequently withdrew the objection and told the district court the 12-level enhancement properly applied. Ayala–Nunez's counsel then argued that because Ayala–Nunez had not served significant time in prison after illegally returning to the United States, the court should consider a below-Guidelines sentence. The Government, relying on our unreported decision in *United States v. Dimas–Flores*, 458 F. App'x 366 (5th Cir. 2012), argues that Ayala–Nunez inappropriately "attempted to use to his advantage at the district court the very fact . . . he now complains about on appeal."

6

No. 16-11542

We disagree with the Government's characterization of Ayala–Nunez's behavior in the district court. Ayala–Nunez's objection to the PSR, which he subsequently withdrew, centered on the use of uncertified copies of conviction documents. Defense counsel withdrew the objection after being provided certified copies of those convictions and agreed that the certified copies supported the 12-level enhancement. Withdrawing the objection to the use of uncertified documents of conviction does not constitute a waiver of an objection to the incorrect imposition of a 12-level enhancement based on the district court's misapplication of the Sentencing Guidelines. *See United States v. Alfaro*, 408 F.3d 204, 208 n.1 (5th Cir. 2005) (finding that the defendant's withdrawal of one evidentiary objection to a sentence enhancement did not constitute a waiver of a separate, distinct legal challenge to the same enhancement). We note, however, that by verbally assenting to the 12-level enhancement, defense counsel nearly waived the ability to challenge the enhancement on appeal. But we decline to find waiver here because of the context of counsel's comment and how the judge responded. Context clarifies that during her colloquy with the judge, defense counsel accepted that she had no objection to the enhancement *based on the certified copies issue*—not that she had no objection whatsoever. The district judge's response indicates a similar understanding. Thus, counsel did not waive all objections to the sentencing enhancement.

### 2. Applying the 12-Level Enhancement Was Not Plain Error

The PSR noted that Ayala–Nunez "was deported subsequent to the imposition of a sentence of probation; therefore, 12 levels are added [pursuant to U.S.S.G. § 2L1.2(b)(1)(B)]." Ayala–Nunez argues that his Delivery Offense sentence did not constitute a "sentence imposed" for purposes of U.S.S.G.

§ 2L1.2(b)(1)(B). Thus, he asserts that the district court plainly erred in relying on a flawed interpretation of the Sentencing Guidelines.

Sentencing Guidelines § 2L1.2 pertains to unlawfully entering or remaining in the United States. Section 2L1.2(a) establishes a base offense level of 8. The provision provides for enhancements with regard to specific offenses for defendants who previously were deported from the United States. A 16-level enhancement is required for drug trafficking felony convictions for which the sentence imposed exceeded 13 months. U.S.S.G. § 2L1.2(b)(1)(A). But "a conviction for a [qualifying] felony drug trafficking offense for which the sentence imposed was 13 months or less" requires a 12-level enhancement. U.S.S.G. § 2L1.2(b)(1)(B). The Application Notes define the phrase "sentence imposed:"

> "Sentence imposed" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of §4A1.2 (Definitions and Instructions for Computing Criminal History), without regard to the date of the conviction. The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release, but only if the revocation occurred before the defendant was deported or unlawfully remained in the United States.

U.S.S.G. § 2L1.2 cmt. 1(B)(vii). Subsection (b) of U.S.S.G. § 4A1.2 defines "sentence of imprisonment" as follows: "(1) The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed. (2) If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b). An Application Note clarifies that: "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." U.S.S.G. § 4A1.2 cmt n.2.

Ayala–Nunez was sentenced to 24 months' deferred adjudication probation for his Delivery Offense, a felony drug trafficking offense. He did not

actually serve a period of imprisonment on the sentence prior to his deportation. His sentence of deferred adjudication probation was subsequently revoked. But the revocation did not occur before Ayala–Nunez was deported; only after his deportation was Ayala–Nunez sentenced to 3 years' imprisonment on the revocation of his probation.

Ayala–Nunez asserts that he did not receive a "sentence imposed" as understood in U.S.S.G. § 2L1.2(b)(1)(B). He argues that he did not serve time in prison for the Delivery Offense prior to his deportation. Thus, according to him, his post-deportation probation revocation (and corresponding imprisonment) should not count in calculating the length of the sentence imposed. Thus, no sentence enhancement should apply.

The Government contends that this definition of "sentence imposed" is used to calculate *which* enhancement applies under U.S.S.G. § 2L1.2(b)(1)— not whether *any* enhancement applies. In its view, deciding which enhancement applies depends on the length of the sentence imposed on the defendant. A 16-level enhancement applies if the sentence imposed was more than 13 months; a 12-level enhancement applies if the sentence was 13 months or less. For Ayala–Nunez, the length of his pre-deportation sentence of probation that was revoked post-deportation is not used in calculating whether the "sentence imposed" on him totaled more or less than 13 months. Thus, according to the Government, the length of the sentence imposed was not more than 13 months, so the 16-level enhancement does not apply. But he is still subject to a 12-level enhancement because one of the two enhancements must apply.

While Ayala–Nunez's interpretation of "sentence imposed" may be plausible, neither Fifth Circuit precedent nor the Sentencing Guidelines contradict the Government's interpretation.

No. 16-11542

We do not need to decide which interpretation is correct, however. "Assuming *arguendo* that the district court's application of § 2L1.2 was erroneous . . . the dispositive question is whether the error was plain." *United States v. Garcia–Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005). "[T]o satisfy the second prong of plain error inquiry, 'the legal error must be clear or obvious, rather than subject to reasonable debate.'" *United States v. Ellis*, 564 F.3d 370, 377–78 (5th Cir. 2009) (quoting *Puckett*, 556 U.S. at 135). Any legal error in this case is neither clear nor obvious. No precedent clearly contradicts the Government's interpretation. The interpretation of the Sentencing Guidelines is subject to reasonable dispute. Ayala–Nunez's claim of plain error thus fails at the second prong.

**B.    Reforming the Judgment to Find That Ayala–Nunez Did Not Previously Commit an "Aggravated Felony" Is Warranted**

A person convicted of illegal re-entry following an "aggravated felony" in violation of 8 U.S.C. § 1326(b)(2) may serve a maximum sentence of 20 years' imprisonment. By contrast, 8 U.S.C. § 1326(b)(1) specifies a maximum term of imprisonment of 10 years for illegal re-entry following a felony conviction.

Adopting the 20-year statutory maximum set forth in the PSR, the district court judgment stated that Ayala–Nunez violated 8 U.S.C. § 1326(b)(2), which requires an "aggravated felony" conviction. However, Ayala–Nunez correctly asserts that he lacked an aggravated felony conviction. Ayala–Nunez was previously convicted of "delivery" under Texas law. Tex. Health & Safety Code § 481.112(c). A defendant may commit that offense merely by offering to sell a controlled substance. *See id.* at § 481.002(8). Texas's delivery of a controlled substance offense is not an aggravated felony because the relevant indivisible statute includes a mere offer to sell. *United States v. Ibarra–Luna*, 628 F.3d 712, 715–16 (5th Cir. 2010). Offers to sell a controlled substance do not constitute an "aggravated felony." *See id.* at 716. The relevant

10

statute is not divisible into "offers to sell" and actual or constructive transfers. *See United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016). Thus, Ayala–Nunez did not commit an "aggravated felony" for purposes of 8 U.S.C. § 1326(b)(2). The district court's error here is plain in light of existing Fifth Circuit precedent.[4]

Ayala–Nunez thus satisfies the first two prongs of the plain error inquiry. However, his claim fails under the third prong of the inquiry, which requires proving that "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings." *Puckett*, 556 U.S. at 135. Ayala–Nunez cannot prove that the district court's reference to the 20-year statutory maximum penalty affected his substantial rights. *See United States v. Mondragon–Santiago*, 564 F.3d 357, 369 (5th Cir. 2009). Ayala–Nunez was sentenced to less than 20 years' imprisonment. And there is no indication in the record that the district court sentenced Ayala–Nunez based on the determination that his Delivery Offense was an "aggravated felony."

The district court's error does not require us to vacate Ayala–Nunez's sentence. The court's finding that Ayala–Nunez committed an aggravated felony under 8 U.S.C. § 1326(b)(2) did not affect the sentencing determination. However, it is appropriate for us to reform the judgment to reflect that Ayala–Nunez's conviction is based on 8 U.S.C. § 1326(b)(1). *See Mondragon–Santiago*, 564 F.3d at 369.

---

[4] The Government recognizes that the issue of divisibility and whether an offer to sell a controlled substance constitutes an "aggravated felony" is currently foreclosed in light of existing Fifth Circuit case law. The Government invites us to revisit this issue, but we decline the invitation in this case.

No. 16-11542

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment, but REFORM it to reflect conviction and sentencing under 8 U.S.C. § 1326(b)(1).