## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10695

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VICTOR LEONEL ORTIZ ALVAREZ,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-32-1

Before KING, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

The defendant was arrested for operating a methamphetamine-recrystallization laboratory and subsequently pleaded guilty to conspiracy to possess methamphetamine with intent to distribute. He was sentenced, in accordance with the guidelines, to 480 months' imprisonment, the statutory maximum. On appeal, he argues that an offense-level enhancement for unlawfully treating or storing hazardous waste, which increased his guideline

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10695

sentence, was erroneous because there was no evidence of any hazardous waste at the laboratory. Because the district court indicated a preference for a sentence at the statutory maximum for reasons unrelated to the hazardous-waste issue, we conclude that any error was harmless and affirm.

## I.

Victor Ortiz Alvarez was arrested after leaving a residence that was known to be a "clandestine methamphetamine re-crystallization laboratory."[1] Ortiz Alvarez agreed to plead guilty to conspiracy to possess methamphetamine with intent to distribute, and he cooperated with DEA investigators, assisting them with the identification and arrest of his coconspirators.

According to his presentence investigation report (PSR), Ortiz Alvarez had a category I criminal history, but his crime had an offense level of 43. Under those conditions, the sentencing guidelines would normally call for a life sentence. But because the crime to which he pleaded guilty carries a maximum sentence of forty years, *see* 21 U.S.C. §§ 841(b)(1)(B), 846, his guideline sentence was exactly that: 480 months. *See* U.S. SENTENCING GUIDELINES MANUAL § 5G1.1(a) (U.S. SENTENCING COMM'N 2018).

Ortiz Alvarez filed several objections to the PSR. At issue here is his objection to a two-level enhancement for unlawful treatment or storage of hazardous waste. *See id.* § 2D1.1(b)(14)(A). Without this enhancement, his offense level would have been 41, and his guideline sentencing range would have been 324-405 months. *See id.* ch. 5, pt. A (table).

The PSR stated that this sentence enhancement applied because:

> [N]umerous items [in the residence] were identified as "hazardous waste" and the treatment of these items was in violation of the

---

[1] In other words, the residence was used for converting liquid methamphetamine into crystal methamphetamine.

> Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d).
> Specifically, Ortiz Alvarez knowingly treated and stored
> hazardous waste . . . without a permit . . . . Further, AET
> Environmental Services had to dispose of all hazardous materials
> associated with the clandestine laboratory . . . .

In response to Ortiz Alvarez's written objections, the government asserted that "it goes without saying that the conversion of methamphetamine in liquid form to crystalline form involves some sort of chemical process the interruption of which would produce something hazardous and/or toxic." The government also observed that "a hazardous waste company was employed to dispose of the chemicals in this case." Similarly, the probation office stood by the PSR, asserting that "samples of the contaminated liquids and solids . . . were transferred to AET Environmental Services for destruction due to [their] hazardous nature and contamination."

Ortiz Alvarez was sentenced on the same day, before the same district judge, as Noe Paramo Castaneda, one of his codefendants. Paramo Castaneda was sentenced first, and he raised an objection to the same hazardous-waste enhancement. The district court stated that "[a]pparently the material that was disposed of, as part of the process of making the methamphetamine, was hazardous in the sense that a special group had to be enlisted to dispose of the material." For this reason, the district court overruled Paramo Castaneda's objection.

Ortiz Alvarez was sentenced next. At his hearing, a DEA agent acknowledged that no testing was performed on the "actual hazardous material" found in the residence. Nevertheless, the district court overruled defense counsel's objection to the hazardous-waste sentencing enhancement, by reference to Paramo Castaneda's objection:

> You were in the courtroom and heard the discussion when we dealt
> with [this objection] in the last case. Of course, [Ortiz Alvarez]'s
> not bound by what we dealt with in the last case, but I think the

No. 19-10695

Presentence Report has sufficient information, and the probation officer's response to the objection, and the government's response to the objection, for me to realize that the objection is without merit, so I'm going to deny that objection.

The DEA agent also testified that Ortiz Alvarez "was honest and gave [the DEA] all the information that he was able to." And the district court found that Ortiz Alvarez "did provide substantial assistance to the government." But the court also expressed concern that Ortiz Alvarez was involved with a Mexican cartel that was importing methamphetamine, cocaine, and heroin into Oklahoma City, Fort Worth, and Dallas, and the court observed, "if the government had charged the defendant with his true offense conduct, he would have had a life sentence guideline range, and I would have imposed a life sentence." Consequently, the district court declined to depart downward from the guidelines, despite the government's request. The court explained, "I think the government has already adequately rewarded the defendant by virtue of the method of charging him so that he's no longer exposed to a life sentence and instead has a maximum sentence of 480 months."

Accordingly, the district court sentenced Ortiz Alvarez to 480 months' imprisonment. This appeal followed.

## II.

## A.

Under the sentencing guidelines, the defendant's offense level should be increased by two "[i]f the offense involved . . . the unlawful transportation, treatment, storage, or disposal of a hazardous waste." U.S. SENTENCING GUIDELINES MANUAL, *supra*, § 2D1.1(b)(14)(A)(ii). The application notes explain that this enhancement applies "if the conduct for which the defendant is accountable . . . involved any . . . transportation, treatment, storage, or disposal violation covered by [four different federal statutes, including] the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)." *Id.* § 2D1.1 cmt.

n.18(A). We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Sauseda*, 596 F.3d 279, 281 (5th Cir. 2010).

Ortiz Alvarez argues that the hazardous-waste enhancement was improper because the government failed to prove that he violated the Resource Conservation and Recovery Act. In particular, he argues that the government failed to identify any hazardous waste that he treated, stored, or disposed of, and he argues that the use of a "cleanup crew"—which he asserts occurs as a matter of course—does not establish the presence of material that constitutes "hazardous waste" as defined by federal law. The government responds that the district court could have concluded that hazardous waste was being stored in the residence because the PSR stated that "acetone cans" were found on the property. We need not resolve this dispute, however. For having carefully reviewed the record, we think that any error in calculating Ortiz Alvarez's guideline sentence was harmless.

## B.

"An erroneous guidelines range calculation is harmless if (1) the district court would have imposed the same sentence had it not made the error, and (2) it would have done so for the same reasons it gave at the prior sentencing." *United States v. Stanford*, 823 F.3d 814, 845 (5th Cir. 2016) (cleaned up). Accordingly, we will not remand a case for resentencing if there is "evidence in the record that [convinces us] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Id.* (citation omitted). The government bears the "heavy burden" of establishing that an error was harmless. *United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010). "[A]n incorrect Guidelines calculation will usually invalidate the sentence, even when the district court chose to impose a sentence outside the Guidelines range." *Id.*

No. 19-10695

The district court explained its sentence as follows:

[I]f the government had charged the defendant with his true offense conduct, he would have had a life sentence guideline range, and I would have imposed a life sentence, so I'm going to sentence him to the top of the guideline range, which is capped at 480 months by virtue of the method by which the government charged him.

Ortiz Alvarez argues that this language reveals an intention by the district court to sentence him in accordance with the sentencing guidelines, whatever they may have been. We disagree.

In our view, the district court's statement indicates that it considered a life sentence to be the appropriate punishment for Ortiz Alvarez's conduct and that it imposed a 480-month sentence instead because that was the longest sentence available. We note that the district court imposed the statutory maximum despite both the government and the defendant requesting a shorter sentence. Additionally, it is clear from the transcript—as Ortiz Alvarez does not dispute—that the alleged hazardous-waste violation did not motivate the district court's determination of what sentence would be appropriate. Accordingly, we conclude that the district court would have imposed the same sentence, for the same reasons, even if there had been no hazardous-waste enhancement and Ortiz Alvarez's guideline sentence had been shorter.

## III.

On that basis, we AFFIRM the judgment of the district court.