# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 31, 2023

Lyle W. Cayce
Clerk

No. 22-60184

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Wade,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:19-CR-153-1

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:*

Defendant Christopher Wade pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). His criminal history included a prior state conviction for conspiracy to distribute methamphetamine. Wade's presentence report included this conviction as one of the three predicate offenses required to support an enhancement under the Armed Career Criminals Act ("ACCA"). Wade objected, arguing that his

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

conviction was not a predicate offense under the ACCA. The district court overruled Wade's objection and imposed a sentence of 96 months of incarceration followed by five years of supervised release. Wade now appeals.

In particular, Wade contends that his prior felony conviction cannot qualify as a "serious drug offense" because it does not "necessarily entail" the conduct described in 18 U.S.C. § 924(e)(2)(A)(ii) (i.e., manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance). However, we need not decide this issue because any potential error committed by the district court was harmless. *See United States v. Redmond*, 965 F.3d 416, 420–21 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1411 (2021).

If the incorrect guidelines range is used, there are two ways to demonstrate harmless error. *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). "One is to show that the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* The other is for the proponent of the sentence to make a convincing showing "(1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).

The government has met its burden under the first test. In this case, the record shows that the district court was well aware of the different guidelines ranges proposed by the parties and repeatedly stated that it would nonetheless impose the same sentence regardless of whether it was correct about the ACCA enhancement. Specifically, the district court explained that its sentence was based on several factors, including Wade's extensive

criminal history, his family background, his ongoing mental health issues, and his history of drug use.

In light of the foregoing, we are satisfied that the district court considered both potential guidelines ranges and was determined to impose the same sentence regardless. Therefore, any error was harmless. *See Guzman-Rendon*, 864 F.3d at 411. AFFIRMED.

No. 22-60184

JAMES E. GRAVES, JR., *Circuit Judge*, concurring:

I join the majority opinion in full. However, I write separately to explain why Wade's conviction for conspiracy to distribute methamphetamine should not qualify as a predicate offense under the Armed Career Criminals Act ("ACCA").

The ACCA imposes a mandatory 15-year term of imprisonment for any person convicted of being a felon in possession of a firearm who previously was convicted of three violent felonies, serious drug offenses, or a combination of both. 18 U.S.C. § 924(e)(1). The ACCA, in turn, defines "serious drug offense" to cover "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" if the offense has a maximum punishment of ten or more years in prison. 18 U.S.C. § 924(e)(2)(A)(ii).

As relevant here, the scope of "serious drug offense" turns on the meaning of the term "involving" in 18 U.S.C. § 924(e)(2)(A)(ii). This definition was recently clarified by the Supreme Court. In *Shular v. United States*, the Court held that § 924(e)(2)(A)(ii) "requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." 140 S. Ct. 779, 782 (2020). In other words, the state offense's elements must "necessarily entail" one of the types of conduct identified in the ACCA (*i.e.*, manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance). *Id.* at 785.

This interpretation narrowed the broad definition this circuit and others had previously applied by requiring more than a mere connection to manufacturing, distributing, or possessing with intent to distribute a controlled substance. *See, e.g.*, *United States v. Vickers*, 540 F.3d 356, 365-66 (5th Cir. 2008) (explaining that "[t]he expansiveness of the word 'involving'

supports that Congress was bringing into the statute's reach those who intentionally enter the highly dangerous drug distribution world"); *United States v. King*, 325 F.3d 110, 113-114 (2d Cir. 2003) ("[I]nvolving has expansive connotations . . . encompassing . . . offenses that are related to or connected with [distributing, manufacturing, or possessing.]"). Consequently, this suggests that some crimes may involve controlled substances yet nonetheless fall outside the term "serious drug offense" as defined in the ACCA. Given the stringency of the ACCA's mandatory minimum requirements, it makes sense that Congress did not intend in the ACCA's definition of a "serious drug offense" to include conduct with only a tenuous connection to drug trafficking.

Notwithstanding this change, this court has observed that the Supreme Court did more than narrow the definition of "involving." In *United States v. Prentice*, we described how *Shular* "broaden[ed] the understanding of 'a serious drug offense' by focusing on the underlying *conduct.*" 956 F.3d 295, 299–300 (5th Cir. 2020) (emphasis in the original). When assessing a "serious drug offense," we stated that the emphasis is on whether the offense's elements "necessarily encompass [] conduct *that is a part of a process of distribution*," as opposed to whether they coincide with elements of a generic offense. *Prentice*, 956 F.3d at 300 (emphasis added). "[T]he proper question," therefore, "is whether [the defendant's] state conviction involved conduct amounting to distribution of illegal drugs." *Id.*

With this background in mind, in my view, Mississippi's conspiracy to distribute methamphetamine offense does not qualify as a "serious drug offense." Under Mississippi law, conspiracy to distribute methamphetamine occurs when two or more persons agree to distribute methamphetamine. *See* MISS. CODE ANN. § 97-1-1 (conspiracy); MISS. CODE ANN. § 41-29-139(b)(1) (possession with intent to transfer); *see also Henderson v. State*, 323 So. 3d 1020, 1027 (Miss. 2021). Nothing more is required. "Mississippi,

unlike many other jurisdictions, does not require proof of an overt act in furtherance of the agreement to establish a conspiracy." *Peoples v. State*, 501 So. 2d 424, 428 (Miss. 1987). Rather, the agreement itself is a completed criminal offense. *Id.* "And the conspiracy is a separate and distinct crime from the substantive offense that is the object of the conspiracy." *Ellis v. State*, 326 So. 2d 466, 468 (Miss. 1976).

Looking at the statutes of conviction, it is clear that this offense falls outside the ACCA's definition of a "serious drug offense," as it does not necessarily entail conduct that "is a part of a process of distribution." *See Prentice*, 956 F.3d at 300. The *conduct* of manufacturing, distributing, or possessing with intent to manufacture or distribute is neither inherent nor required for a conviction under Mississippi law. Contrarily, the State routinely prosecutes and convicts defendants for conspiring even if they have only made an agreement. *See, e.g.*, *Berry v. State*, 996 So. 2d 782, 789 (Miss. 2008) ("The State only had to prove that two or more persons agreed to commit a crime."). Because a mere agreement to distribute methamphetamine does not amount to manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance, Wade's conviction does not qualify as a "serious drug offense" under the ACCA.