# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2022

Lyle W. Cayce
Clerk

No. 20-51054

United States of America,

*Plaintiff—Appellee*,

*versus*

Brian Alfaro,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CR-879-1

Before Jolly, Smith, and Engelhardt, *Circuit Judges*.
E. Grady Jolly, *Circuit Judge*:

Following an eight-day trial, a jury convicted Brian Alfaro on seven counts of mail fraud under 18 U.S.C. § 1341. The district court sentenced Alfaro to 121 months of imprisonment with three years of supervised release and ordered restitution in the amount of $9,922,428.63. This sentence was within the Guidelines range. Alfaro appeals his sentence and the district court's restitution order. For the reasons specified below, we VACATE and REMAND the sentence and restitution order based solely on the district court's erroneous assessment of total loss amount. In all other respects we AFFIRM.

No. 20-51054

# I

From 2012 through mid-2015, Alfaro, through his company, Primera Energy (Primera), offered investors the opportunity to own shares—sold as units of "working interest"—in various oil and gas prospects, including the Screaming Eagle 4H Prospect (4H), Screaming Eagle 6H Prospect (6H), and the Black Hawk Horizontal Buda #1 Prospect. Primera created a Confidential Private Placement Memorandum (PPM), which memorialized each investor's contract. According to the indictment, Alfaro or his employees made material, false representations to investors in order to induce them into buying units and then fraudulently misused the investors' funds.

In the presentence report (PSR), the probation officer determined that based on a total amount of investment ($13,781,150.87) minus the calculated tax benefits that the investors could have claimed on their tax returns ($3,858,722.24), the total amount of loss was $9,922,428.63. The PSR noted that Alfaro had a criminal history category of I and calculated that the total offense level was 39. The resulting Guidelines range of imprisonment was 262 to 327 months, but the probation officer noted that a sentence in this range could only be achieved if consecutive sentences were imposed because the statutory maximum term of imprisonment was 240 months. The PSR also determined the victims were owed $9,922,428.63 in restitution.

At sentencing, the Government conceded that the PSR's total loss amount should be reduced by the $325,540.35 that Primera paid to 4H investors in royalties and the $167,288.55 distributed to investors through Primera's bankruptcy proceedings, resulting in a total loss amount of $9,429,599.73. The Government correctly noted that, after that reduction in loss, the applicable specific offense characteristic was an 18-level adjustment

under § 2B1.1(b)(1)(J). Thus, the total offense level would be 37, which would result in a Guidelines range of imprisonment of 210 to 262 months.

Without specifically ruling on the Government's concession, the district court held that the PSR's loss calculations were correct and adopted the PSR's proposed loss finding of $9,922,428.63 by finding the specific offense characteristics merited a 20-level adjustment. The district court also found that Alfaro's offense resulted in substantial financial hardship to five or more victims, the offense involved sophisticated means, and Alfaro abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense. The district court, however, sustained Alfaro's objection to the organizer-or-leader enhancement and granted Alfaro a three-level reduction for acceptance of responsibility because Alfaro agreed to not appeal the jury's verdict. Thus, Alfaro had a criminal history category of I and a total offense level of 32. The district court then concluded that the correct Guidelines range was 121 months to 151 months, imposed a sentence of 121 months' incarceration, and ordered restitution in the amount of $9,922,428.63.

On appeal, Alfaro argues that the district court erred in: (1) its loss calculation; (2) its application of the § 2B1.1(b)(2)(B) adjustment for an offense causing substantial financial hardship to five or more persons; (3) its application of the § 2B1.1(b)(10)(C) adjustment for an offense and conduct involving sophisticated means; and (4) its calculation of the restitution award. We first address Alfaro's loss calculation arguments.

## II

### A

Alfaro argues that the district court's loss calculation was incorrect because: (1) it should have determined his sentence based on gain, rather than on actual loss, which he asserts was not reasonably quantifiable; (2) it did not

account for the fair market value of the investors' ownership interests in the wells and the fair market value of the services rendered in the completion of most of the wells; (3) the loss amount should not have been based on 425 investors; (4) there is no evidence that Alfaro "knew" or could "reasonably foresee" a loss of investment; (5) the district court erred by failing to consider "other factors" relevant to whether Alfaro intended to cause loss; and (6) the district court erred by failing to accept the Government's concession that the total loss amount was $9,429,599.73.

We review the district court's loss calculations for clear error, but the district court's method of determining loss, as well as its interpretations of the Guidelines, are reviewed *de novo*. *United States v. Harris*, 821 F.3d 589, 601 (5th Cir. 2016). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks and citation omitted). And facts relevant to sentencing must be proven by a preponderance of the evidence. *United States v. Duhon*, 541 F.3d 391, 395 (5th Cir. 2008). A PSR generally "bears sufficient indicia of reliability to be considered . . . by the sentencing judge in making factual determinations." *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (internal quotation marks and citation omitted). "The district court receives wide latitude to determine the amount of loss and should make a reasonable estimate based on available information." *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007); *see also* U.S.S.G. § 2B1.1 cmt. n.3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."). As discussed more *infra*, all of Alfaro's loss calculation arguments lack merit except his sixth and final one: that the district court erred by not accepting the Government's concession as to the total loss amount.

First, Alfaro's argument that the district court should have calculated his sentence under § 2B1.1 based on gain lacks merit because the actual loss amount could be reasonably determined. *See* U.S.S.G. § 2B1.1 cmt. n.3(A)-(C). Accordingly, Alfaro has failed to show that the district court erred by using the actual loss standard for purposes of calculating his sentence under § 2B1.1. *See Harris*, 821 F.3d at 601.

Second, Alfaro argues that the actual loss standard was inappropriate in this case because it cannot account for the fair market value of the investors' ownership interests in the wells and the fair market value of the services rendered in the completion of most of the wells. But, because the investors did not receive any value or benefit from Primera's legitimate business expenditures, there is no reason to credit those amounts against the actual loss amount. *See United States v. Spalding*, 894 F.3d 173, 191-92 (5th Cir. 2018).

Third, Alfaro contends that the district court erred by calculating the loss amount based on 425 investors because the prosecution failed to prove that all those investors were victims of his offense and that all the 420 non-testifying investors considered the "no transaction-based compensation" clause in the PPMs to be material to their decision to invest. Because materiality of falsehood is an element of a mail fraud offense under § 1341, the jury necessarily found that Alfaro used false material representations, pretenses, or promises in his scheme to defraud. *See Neder v. United States*, 527 U.S. 1, 25 (1999). For purposes of calculating financial loss under § 2B1.1, a "victim" is defined as "any person who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1 cmt. n.1. The record indicates that all the investors in Primera's wells—and specifically those who invested in the 4H and 6H wells—lost their initial investments and ownership interests, although there is some variation among investors as to how much they recouped in dividends and bankruptcy payouts. Alfaro has

not shown that the district court erred by failing to make a materiality finding as to each specific investor before including that investor as a victim for purposes of the loss calculation. Furthermore, to the extent that Alfaro challenges the district court's use of an extrapolation methodology in the loss calculation, we have affirmed that method to calculate loss amounts in other fraud cases. *See, e.g.*, *United States v. Fairley*, 880 F.3d 198, 215-16 (5th Cir. 2018); *United States v. Johnson*, 841 F.3d 299, 303-05 (5th Cir. 2016).

Fourth, Alfaro's challenge to the district court's use of the actual loss standard is based, in part, on whether it was reasonably foreseeable that the investors would lose their investments and ownership interests as a result of his offense. To the extent that his arguments are based on the implication that he lacked the requisite specific intent, the jury necessarily rejected that argument by finding him guilty because specific intent to defraud is an element of his offense. *See United States v. Strong*, 371 F.3d 225, 227 (5th Cir. 2004). Alfaro's allegations that other factors contributed to Primera's eventual downfall do not obviate his legal liability deriving from his offense. *See United States v. Bazemore*, 839 F.3d 379, 390-91 (5th Cir. 2016); *United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005). Based on the evidence at trial, the district court did not commit clear error in finding that the actual losses to the investors were reasonably foreseeable pecuniary harm that resulted from Alfaro's offense.

Fifth, Alfaro argues that a variety of general factors indicate that he did not intend to cause any loss. Specifically, he argues that (1) the prosecution and the investor witnesses erroneously stated that Primera's use of the investors' funds for its own expenses was limited to the Management Fee; (2) he reasonably relied on various financial estimates that the well projects would be profitable; and (3) investors owed as overages the unpaid vendor obligations. But, as discussed *supra*, the jury's verdict necessarily showed that Alfaro had the intent to defraud, and the district court found that

the investors' loss of their investments, minus certain credits, was reasonably foreseeable. Even if it were true that investors owed the unpaid vendor obligations as overage charges, those amounts did not ultimately confer any value to the investors and are therefore not proper offsets. *See Spalding,* 894 F.3d at 191-92. Therefore, these general factors do not support a conclusion that the district court's loss calculation was clear error.

Sixth, Alfaro contends that the district court erred by failing to accept the Government's concession as to the total actual loss amount. We agree; the district court's failure to accept the Government's concession was error. Specific evidence supported the Government's concession that the total loss amount was $9,429,599.73 after accounting for proper offsets to the total loss amount, and as such, the district court should have accepted it. *See* U.S.S.G. § 2B1.1 cmt. n.3(E)(i); *Harris,* 821 F.3d at 605-07; *United States v. Klein,* 543 F.3d 206, 213-15 (5th Cir. 2008). The district court's failure to accept the Government's concession resulted in an erroneous Guidelines range calculation. If the district court had accepted the Government's concession, Alfaro's Guidelines range would have been 97 months to 121 months, not the 121-month to 151-month range adopted by the district court. U.S.S.G. §5A.

The district court's procedural error in calculating the Guidelines range requires a remand unless the Government can establish that the error was harmless. *See Harris,* 821 F.3d at 607. Establishing harmless error is a "heavy burden" that requires proving that the "sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *United States v. Ibarra-Luna,* 628 F.3d 712, 717, 719 (5th Cir. 2010). The Government can establish harmless error if the wrong Guidelines range is employed in two ways. First, the Government can "show that the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *United States v. Guzman-Rendon,* 864 F.3d 409, 411 (5th Cir.

2017). Second, where the district court did not consider the correct Guidelines range, the Government must "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Redmond*, 965 F.3d 416, 420 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Ibarra-Luna*, 628 F.3d at 714), *cert. denied*, 141 S. Ct. 1411 (2021). The Government has not met its heavy burden to establish harmless error in this case.

The record is clear that the district court did not consider both the incorrect Guidelines range and the range now deemed correct. Instead, the district court considered the positions of both the Government and Alfaro on the Sentencing Guidelines but rejected both parties' calculations in favor of what it deemed to be the correct Guidelines range. The court rejected Alfaro's proposed Guidelines calculations of 37 months to 46 months and stated that if Alfaro's proposed Guidelines calculations were correct, the court would nonetheless find that an upward adjustment would be required. The district court also rejected the Government's Guidelines calculation, which was more than the 240-month statutory maximum, and stated that if the Government's calculation were correct, it would find that "a downward adjustment/variance would be in order." The district court concluded that the correct Guidelines range was 121 to 151 months and sentenced Alfaro to 121 months' incarceration.

Contrary to the Government's argument, the district court's rejection of both parties' proposed Guidelines ranges does not show that it had a particular sentence in mind and would have imposed it notwithstanding the calculation error. Rather, the district court's reasoning shows that it believed that a now erroneous Guideline sentence of 121 months was appropriate, which supports the inference that the Guidelines calculation influenced the sentence. *See Ibarra-Luna*, 628 F.3d at 719. Moreover, in sentencing him to

121 months' incarceration, the district court sentenced Alfaro to the bottom of the incorrect Guideline range, which we have previously concluded "indicates that the improper guideline calculation influenced the sentence." *United States v. Martinez-Romero*, 817 F.3d 917, 925-26 (5th Cir. 2016) (per curiam); *see also id.* ("We . . . conclude that the district court's selection of the bottom of the incorrect guideline range indicates that the improper guideline calculation influenced the sentence."); *United States v. Cardenas*, 598 F. App'x 264, 269 (5th Cir. 2015) (unpublished) (holding that an error was not harmless when the district court chose the lowest end of the improper sentencing range after stating that "even if the Court isn't correct, the Court believes it is necessary to sentence at this very high range"). The district court's selection of the bottom of the incorrect Guidelines range is not a mere "coincidence." *Id.* Accordingly, the record does not convincingly demonstrate that the sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation. A remand for resentencing is therefore appropriate.

As the district court also used the actual loss amount calculation to determine the restitution amount under § 2B1.1(b)(1), the district court's restitution award is vacated and remanded.[1] *See United States v. Beydoun*, 469 F.3d 102, 107-08 (5th Cir. 2006). Thus, we do not consider Alfaro's restitution arguments.

---

[1] On appeal, the Government concedes that it "may be necessary to remand" the restitution award "to determine the recipients of that value and reduce the amount awarded to those victims" because the loss amount calculated by the district court failed to account for the royalties from the 4H well and the reimbursements from the bankruptcy court.

B

Alfaro next challenges the district court's application of the § 2B1.1(b)(2)(B) adjustment for causing substantial financial hardship to five or more persons because he asserts that there was insufficient proof showing that the requisite number of investors who submitted victim impact statements were victims and had suffered a substantial financial loss. The district court was entitled to rely on the PSR's findings that there were at least five victims who suffered substantial financial hardship, especially given the PSR's inclusion of the 19 victim impact statements upon which those findings relied. *See United States v. Simpson*, 741 F.3d 539, 557 (5th Cir. 2014); *United States v. Tedder*, 81 F.3d 549, 551 (5th Cir. 1996). Alfaro did not meet his burden of showing that those findings were inaccurate or materially untrue. *See Simpson*, 741 F.3d at 557; *Tedder*, 81 F.3d at 551. Moreover, examination of the victim impact statements shows that well over five of the victims met at least one of the enumerated factors set forth in § 2B1.1's commentary for determining if the offense resulted in substantial financial hardship to a victim. *See* U.S.S.G. § 2B1.1 cmt. n.4(F). Accordingly, the district court's application of the § 2B1.1(b)(2)(B) adjustment was not error.

C

Finally, Alfaro argues that the district court erred by applying the § 2B1.1(b)(10)(C) adjustment for an offense and conduct involving sophisticated means. He portrays his offense conduct as straightforward and asserts that the stated bases for this adjustment lacked a sufficient evidentiary basis. Our examination of the record shows that the factual findings underlying this adjustment were plausible in light of the record and when Alfaro's scheme is viewed in its entirety. *See United States v. Miller*, 906 F.3d 373, 380 (5th Cir. 2018). We have affirmed application of this adjustment even if the method used to impede discovery of the offense is "not by itself

particularly sophisticated." *Id.* Because we are not "left with the definite and firm conviction that a mistake has been committed," the district court did not commit clear error in this regard. *Id.* (internal quotation marks and citation omitted).

### III

In this appeal, we have held that the district court erred in calculating the total loss amount because that court failed to accept the Government's concession that the total loss amount was $9,429,599.73. We have rejected Alfaro's other loss calculation arguments. Additionally, we have vacated and remanded the district court's restitution award because it was based on the district court's erroneous assessment of the total loss amount. Finally, we have concluded that the district court's application of the § 2B1.1(b)(2)(B) adjustment for causing substantial financial hardship to five or more persons was not error, and that the district court did not commit clear error in applying the § 2B1.1(b)(10)(C) adjustment for an offense and conduct involving sophisticated means.

Accordingly, we VACATE the imposed sentence based solely on the district court's erroneous assessment of total loss amount, and REMAND for resentencing in accordance with this decision. In all other respects, the judgment of the district court is AFFIRMED.

AFFIRMED in part; VACATED; REMANDED.