# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2024

Lyle W. Cayce
Clerk

———————

No. 23-20068

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Antonio Gomez, Jr.,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-499-1

———————————————————————

Before Clement, Graves, and Ramirez, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:*

Antonio Gomez, Jr., was charged with possession of a firearm by a convicted felon. He pleaded guilty and was sentenced to 120 months of incarceration and 3 years of supervised release. Gomez appeals the denial of his motion to suppress and the application of an elevated offense level to his sentence. Finding no error, we AFFIRM.

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20068

## BACKGROUND

After 1:00 a.m. on April 10, 2021, a resident of Oakland Garden Apartments in Houston, Texas, reported a burglary in progress. While hiding in his kitchen, the resident informed the dispatcher that several men and women were breaking into his apartment located on the western edge of the apartment complex near a hexagon-shaped pool. The caller did not provide a description of the suspects. Nor did the caller indicate whether the suspects possessed weapons or traveled by vehicle or on foot.

Officer Jacob Ready of the Houston Police Department was in the surrounding area and responded to the ongoing burglary via the eastern entrance of Oakland Garden on Antoine Drive. After parking his patrol car, Officer Ready hastily proceeded through a dimly lit alleyway by foot. He then encountered Antonio Gomez, Jr., exiting a perpendicular alleyway near an oval-shaped pool. While passing by Gomez's left side, Officer Ready turned towards Gomez and noticed a black gun in his right hand and exclaimed, "Hey, what the fuck?" Officer Ready then tackled Gomez to the ground, handcuffed him, and reported the detention. After a moment, two more officers arrived, and Officer Ready instructed them to look for the gun that Gomez had thrown. One of the officers retrieved the loaded firearm.

Officer Ready took Gomez to his patrol car for safety reasons. While walking to the parking lot, Officer Ready asked Gomez if he had a criminal history and if he had a driver's license. Gomez admitted that he had both and told Officer Ready his name and date of birth. Officer Ready placed Gomez in the back of the patrol vehicle and confirmed his identity. The criminal-history check revealed that Gomez had at 17 prior convictions, including numerous felony convictions.

Officer Ready contacted the district attorney, who agreed to charge Gomez with possession of a firearm by a convicted felon and evading arrest.

2

No. 23-20068

Officer Ready did not read Gomez his *Miranda* rights but informed him of the charges. Officer Ready transported Gomez to the processing center.

On October 14, 2021, a federal grand jury indicted Gomez for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Gomez filed a motion to suppress evidence. The district court held a suppression hearing with Officer Ready as the sole witness. Officer Ready's body-worn camera footage from the early morning of April 10, 2021, was viewed at the hearing.

During the cross-examination, Officer Ready testified that it was not unlawful for Gomez to carry a firearm under certain circumstances. Officer Ready then explained why he decided to tackle and detain Gomez:

> Obviously[,] I took the totality of the circumstances. […] [B]asically, this specific apartment complex, the gang violence, the shootings, the burglary of a habitation that we do have, it's very easy for a suspect to hear the jingling of a police officer's keys or handcuffs or hear someone running and think, maybe I should go in this direction. Then I encounter him. I know he has a firearm. He starts coming up with his arm. I start to move towards him. Then he throws the gun. It happened so rapidly. I know we're looking at three seconds of actual time right here, but it was based on the totality of the circumstances.

Officer Ready acknowledged that he did not have a description of the burglars or a report of a firearm at the time of the arrest.

The district court denied the motion to suppress. Gomez pleaded guilty to the charged offense while reserving his right to appeal the suppression ruling.

The presentence report (PSR) assigned a base offense level of 22 because the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine and Gomez had a prior conviction for a crime of

violence. U.S.S.G. § 2K2.1(a)(3). Gomez's offense level was reduced to 19 for acceptance of responsibility. Offense level 19 coupled with a criminal history category of VI resulted in a sentence guidelines range of 63 to 78 months in prison. The PSR also suggested that an upward departure from the guidelines range might be appropriate given that Gomez's criminal history category did not represent the seriousness of his criminal history.

Gomez objected to the PSR, arguing that the calculated base offense level was inaccurate and the recommendation for an upward departure was unwarranted. Gomez argued that there was no evidence establishing that the firearm had a large-capacity magazine attached to it and the Government had to show that "the gun had the necessary attachment to prove its capability." Because the Government failed to show the capability of the gun, Gomez insisted that he should be assigned a base offense level of 20 and his guidelines range should be 51 to 63 months. In response, a probation officer testified that Gomez possessed a semiautomatic handgun with an attached magazine that was capable of accepting 30 rounds of ammunition. Therefore, the base offense level was properly calculated. The district court overruled Gomez's objection, and Gomez declined the opportunity to allocute.

The Government requested a top-of-the-guidelines sentence in light of Gomez's 17 prior convictions. Gomez requested a downward variance to a total offense level of 17. Gomez argued that when he objected to the PSR he did not know that the magazine could accept more than 15 bullets. While he possessed a firearm with high-capacity capability, Gomez explained, when the firearm was confiscated from him it only had one live bullet and did not have the ability to fire multiple rounds.

Considering Gomez's criminal history, the district court adopted the Government's recommendation for an upward departure. The district court sentenced Gomez to 120 months and 3 years of supervised release. The

district court based its sentencing decision on the seriousness of the offense and the need to deter Gomez from future crimes and to protect the public.

Gomez objected to the sentence as greater than necessary to achieve the sentencing goals of 18 U.S.S.G. § 3553(a). Gomez argued that his criminal history primarily included crimes he committed when he was 18 to 20 years old and the instant crime is a nonviolent offense. Gomez further argued that he received no benefit for pleading guilty and accepting responsibility. Nevertheless, the district court sentenced Gomez to ten years, the statutory maximum.

## STANDARD OF REVIEW

When examining a district court's suppression ruling, we review factual findings for clear error and the legality of police conduct de novo, viewing the evidence in the light most favorable to the prevailing party. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.), *opinion modified on other grounds*, 622 F.3d 383 (5th Cir. 2010).

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Martinez-Rodriguez*, 821 F.3d 659, 662 (5th Cir. 2016).

## DISCUSSION

Gomez appeals the denial of his motion to suppress and the application of the elevated offense level under § 2K2.1(a)(3). We address each in turn.

Gomez contends that Officer Ready executed an arrest—not a detention—pursuant to an investigatory stop, and that Officer Ready lacked probable cause for the arrest. Viewing the evidence in the light most favorable to the Government, we disagree with Gomez.

No. 23-20068

Officer Ready entered the apartment complex after midnight to respond to a call about an ongoing burglary involving multiple perpetrators. The complex is known for criminal activity and gang violence. While proceeding by foot through the complex, Officer Ready encountered Gomez, who was carrying a firearm. Upon noticing it, Officer Ready shouted at Gomez, and Gomez attempted to conceal the firearm and flee. Within seconds, Officer Ready lawfully seized Gomez to investigate the ongoing criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 29–31 (1968) (explaining that a seizure of an individual who an officer has reasonable grounds to believe is armed and dangerous does not violate the Fourth Amendment). Officer Ready's seizure constituted a detention, not a formal arrest.

Furthermore, the totality of circumstances supports the conclusion that Officer Ready had reasonable suspicion to detain Gomez. The facts before us—the encounter occurring in the middle of the night in a reputed high crime area coupled with Gomez carrying a firearm and attempting to flee—establish that a reasonably prudent officer could have harbored a reasonable suspicion that criminal activity was afoot. *See United States v. McKinney*, 980 F.3d 485, 495–96 (5th Cir. 2020) (explaining that concealing contraband and fleeing from officers contribute to suspicion); *see also United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014); *United States v. Rideau*, 969 F.2d 1572, 1574–75 (5th Cir. 1992) (en banc) (explaining that late-night encounters in high crime neighborhoods raise the level of police suspicion). The district court did not err by denying Gomez's motion to suppress.

Gomez also contends that the district court erred by assigning him a base offense level of 22, pursuant to § 2K2.1(a)(3), because the Government failed to establish that the firearm had the ability to fire multiple rounds without reloading at the time of the offense. Gomez construes the "has the ability to" language in the commentary's time-of-offense requirement to plainly mean that the "subject can, at the relevant time, do the action."

Gomez notes that because the firearm had one round of ammunition, he lacked the ability to fire multiple rounds. He therefore contends the application of a 22 base offense level was an error. Gomez further argues that this error is not harmless because, if the 22 base offense level was not applied, his base level would have been 20 months, pursuant to § 2K2.1(a)(4), and his sentence would have been 51 to 63 months. Gomez thus reasons that with the appropriate guidelines range the maximum sentence would be 57 months lower than his imposed sentence.

Gomez and the Government disagree on the appropriate standard of review. We do not resolve this dispute because Gomez's argument fails even if we apply de novo review, the least deferential standard. [1]

If error exists in the district court's application of the base offense level under § 2K2.1(a)(3), the error was harmless. We review sentences for procedural error and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). "[A] district court commits procedural error by improperly calculating the guidelines range[.]" *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). Usually, we will invalidate a sentence if the calculation is improper. *Id.* However, if the error was harmless—the error did not affect the district court's selection of an imposed sentence—"[w]e will not vacate and remand for resentencing." *Id.*

The Government, the party seeking to uphold the sentence, carries the burden of establishing harmlessness. *See United States v. Alfaro*, 30 F.4th 514, 520 (5th Cir. 2022). This burden is satisfied if the Government "show[s] that the district court considered both ranges (the one now found incorrect

---

[1] The Government argues that Gomez failed to preserve this issue on appeal and that we should perform plain error review. Gomez argues that because the issue was preserved on appeal it should be reviewed de novo.

and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* (internal quotation marks and citation omitted). Although the record must show "clarity of intent" expressed by the district court, "such statements do not require magic words." *United States v. Shepherd*, 848 F.3d 425, 427 (5th Cir. 2017); *see United States v. Soza*, 874 F.3d 884, 895–96, 896 n. 50 (5th Cir. 2017) (recognizing that a statement from the district court that it would have imposed the same sentence regardless of the alleged guidelines error renders harmlessness abundantly clear but holding that such a statement is not necessary).

After the Government recommended a within-guidelines range sentence of 63 to 78 months, Gomez requested a downward variance. Upon consideration of Gomez's criminal history, the seriousness of the offense, and the need to deter further criminal conduct, the district court imposed a 120-month sentence. Gomez objected to the reasonableness of the sentence. The district court overruled his objection, noting that the 120-month sentence was "the lowest reasonable sentence in this case. [Gomez is] a violent offender and needs to be removed from society. 10 years is all I can give him[.]"

The district court did not say that it would have imposed the same sentence regardless of any error, but the presence or absence of such a statement is not dispositive. *See Shepherd*, 848 F.3d at 427; *United States v. Redmond*, 965 F.3d 416, 420–21 (5th Cir. 2020). Taken together, the district court's statements show that the court had a particular sentence in mind—the statutory maximum—and that it would have imposed this sentence, notwithstanding any potential error, based on independent factors, i.e., primarily Gomez's dangerousness and his substantial criminal history. *See Redmond*, 965 F.3d at 420. Furthermore, the district court imposed a sentence beyond the calculated guideline range, bolstering the fact that the district court acted independently of any assumed error. *See United States v.*

*Groce*, 784 F.3d 291, 297 (5th Cir. 2015), *superseded by regulation on other grounds,* U.S. SENT'G GUIDELINES MANUAL § 2G2.2 cmt. n.1 (U.S. SENT'G COMM'N 2016), *as recognized in United States v. Halverson*, 897 F.3d 645, 651 (5th Cir. 2018). Therefore, the Government has met its burden of establishing harmlessness. We AFFIRM.