# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30370

————————

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Randall Tyler,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CR-48-8

_____

Before Clement, Graves, and Willett, *Circuit Judges*.

Per Curiam:[*]

Randall Tyler pleaded guilty in a written plea agreement to one count of conspiracy to possess with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. On appeal, Tyler challenges the district court's assessment of his base offense level at sentencing as determined by the drug quantity attributed to him as a member of a drug trafficking ring. Because the

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30370

evidentiary record does not support Tyler's assigned drug-weight responsibility, we REVERSE and REMAND.

## I.

Tyler's conviction results from his involvement in a transnational drug trafficking conspiracy through which drug suppliers in the Sinaloa Cartel smuggled narcotics into the United States from Mexico. Beginning in late 2019, Tyler conspired with Cedric Sinegal, Robert Gant, and others to distribute these narcotics. Sinegal led the operation by coordinating drug shipments from Mexico into California for consignment in Louisiana.

Physical and electronic surveillance connected Tyler to the conspiracy. After making controlled purchases of narcotics, law enforcement officials wiretapped Sinegal's phone and learned that he supplied "large quantities of narcotics on consignment" to Tyler. In January 2020, Sinegal traveled to Mexico to meet with members of the cartel about large shipments of drugs set to travel across the country's southern border into California. During this trip, Sinegal contacted Tyler, and the pair discussed the "type and quantity of narcotics" that Sinegal expected to deliver to Tyler upon Sinegal's return to Louisiana. Sinegal traveled to California weeks later to supervise the loading of drug-transport vehicles destined for Louisiana in furtherance of this transaction.

On February 5, 2020, law enforcement conducted a coordinated stop of Sinegal's drug caravan near Alexandria, Louisiana. Inside the transport vehicles, agents discovered 120 pounds of marijuana and approximately 44 pounds (or 19.95 kilograms) of methamphetamine. After conducting this coordinated stop, agents executed search warrants at Sinegal's home, the conspiracy's stash house in Eunice, Louisiana, and at Gant's residence. Agents found roughly one kilogram of fentanyl and one ounce of

methamphetamine at the stash house. And in Gant's home, they recovered 260 grams of heroin and 320 grams of methamphetamine.

A grand jury indicted Tyler on three separate counts, including charges of conspiracy to possess and distribute heroin containing fentanyl, methamphetamine, and cocaine (counts one, thirteen, and nineteen, respectively). Ultimately, Tyler entered a plea agreement with the United States on the sole count involving methamphetamine.

In this plea agreement, Tyler stipulated that he knowingly and willingly agreed to distribute between 500 grams and 15 kilograms of methamphetamine. According to the Presentence Investigation Report ("PSR") prepared by the U.S. Probation and Pretrial Services Office ("Probation Office"), "[s]uch a broad range would establish a floor Base Offense Level of 30 and a ceiling Base Offense Level of 34."[1] Tyler also acknowledged that any sentence would be governed by the Sentencing Guidelines and ultimately subject to the discretion of the district court judge. Tyler contested, however, that he knew the conspiracy involved controlled substances other than methamphetamine.

Specifically, the PSR "conservatively" attributed 500 grams of methamphetamine to Tyler, even though "[t]he exact quantity of methamphetamine could not be established with reasonable certainty." The PSR attributed a quantity of methamphetamine at the low end of the stipulated range as part of the factual basis for Tyler's guilty plea.

Additionally, the PSR attributed one kilogram of heroin, 400 grams of fentanyl, and 5 kilograms of cocaine to Tyler by considering the conspiracy's possession of these drugs as "relevant conduct" as part of the

---

[1] According to U.S.S.G. § 2D1.1(c), a base offense level of 34 is appropriate when "[a]t least 5 KG but less than 15 KG of Methamphetamine" is attributable to a defendant.

No. 23-30370

pursuant to U.S.S.G. § 1B1.3(a). The Probation Office acknowledged that "discovery information provided by the government failed to attribute drug quantities to the defendant" for these particular substances, so the PSR relied upon the quantities contained in dismissed counts one (fentanyl and heroin) and nineteen (cocaine) of the third superseding indictment.

Pursuant to U.S.S.G. § 2D1.1, the attributed quantities of the four different controlled substances were used to calculate a "converted drug weight" for assigning Tyler's base offense level. An overall drug weight responsibility of 4,000 kilograms led to a base offense level of 32.[2] Tyler subsequently received a three-point offense level reduction for his acceptance of responsibility. With a criminal history score of 13, his range of imprisonment pursuant to the Sentencing Guidelines became 151 to 188 months.

At sentencing, Tyler objected to the inclusion of "relevant conduct" in the drug weight calculation for which the PSR assigned him responsibility. Specifically, Tyler argued that it would be unfair to account for any drug weight outside of the methamphetamine to which he had pleaded guilty to conspiring to possess and distribute in his plea agreement. Nonetheless, the district court overruled his objection, noting that judges at sentencing are "not bound by the stipulation" pursuant to U.S.S.G. § 6B1.4(d). The district court subsequently sentenced Tyler to a term of 162 months' imprisonment.

Tyler filed a timely notice of appeal.

_____

[2] According to Tyler's PSR, "[p]ursuant to [U.S.S.G. §] 2D1.1(c)(4), at least 3,000 kilograms but less than 10,000 kilograms of Converted Drug Weight yields a Base Offense Level of 32."

## II.

We review a district court's interpretation of the Sentencing Guidelines de novo and a district court's factual findings for clear error. *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam). Specifically, a district court's findings regarding drug quantity for purposes of establishing a base offense level is a factual finding reviewed for clear error. *See United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Bass*, 996 F.3d 729, 736 (5th Cir. 2021).

But when a defendant's argument on appeal differs from the basis of his objection in the district court, we apply the plain-error standard of review. *United States v. Rojas*, 812 F.3d 382, 390–91 (5th Cir. 2016). A district court plainly errs when it (1) commits an error; (2) the error is clear or obvious; and (3) the error affects the defendant's substantial rights. *Id.* at 391 (citing *United States v. Ferguson*, 211 F.3d 878, 886 (5th Cir. 2000)). "Even if these conditions are met, the decision whether to correct a forfeited error remains soundly within our discretion." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 735–736 (1993)). We only correct such an error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *Olano*, 507 U.S. at 736).

## III.

## A.

A defendant convicted of a drug offense is sentenced based on the amount of drugs involved in the offense pursuant to U.S.S.G. § 2D1.1(c). On appeal, Tyler argues that the district court erred by attributing to him certain amounts of narcotics involved in the conspiracy other than methamphetamine without an evidentiary determination when calculating his base offense level.

As an initial matter, the parties disagree whether Tyler properly preserved this argument on appeal. The Government contends that Tyler's argument now varies from the one he made before the district court at sentencing. At that earlier stage, Tyler largely argued that the stipulated facts in his plea agreement bound the district court to consider only the weight of the methamphetamine he pleaded guilty to possessing in calculating his base offense level. Our court's precedent, however, squarely forecloses such an argument. *See, e.g.*, *United States v. Vital*, 68 F.3d 114, 118 (5th Cir. 1995) (counting cases to confirm that facts contained in dismissed counts can be used in determining relevant conduct).

However, prior to sentencing, Tyler also challenged whether he "reasonably knew the scope of the conspiracy involv[ed] . . . other controlled substances." Then during his sentencing hearing, the district court tried to summarize his objection. The district court asserted that Tyler relied on the factual basis in which he disputed whether he reasonably knew that the scope of the conspiracy involved other drugs and that his basic claim was that "the tail wags the dog . . . and [relevant conduct] becomes the driver of the calculations instead of the offense level to which a guilty plea has been entered." The judge asked whether "[t]he question is . . . what is the incentive of the stipulation in the [ ] factual basis" if relevant conduct effectively overrides the stipulated fact that incentivized Tyler to plead. *Id.* Tyler's counsel agreed with this summary and further noted that the charges serving as the basis for the PSR's relevant conduct analysis had been dismissed pursuant to Tyler's guilty plea.

Ultimately, the district court found that it could consider facts relevant to sentencing under U.S.S.G. § 6B1.4(d). In overruling Tyler's objection, the district observed that "[t]he stipulation that incentivized the

defendant to plead guilty is not honored because the relevant conduct overrides the plea."

Our circuit lacks a bright-line rule for determining whether a matter was properly raised in a district court. *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017) (quoting *United States v. Brown*, 561 F.3d 420, 435 n.12 (5th Cir. 2009)) (cleaned up). As we have held before, a defendant's objection in the district court and his argument on appeal need not be identical to be preserved. *United States v. Rodriguez-Leos*, 953 F.3d 320, 325 (5th Cir. 2020). However, a defendant's objection must be "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). In short, the defendant must have provided "the district court the opportunity to address the gravamen of the argument presented on appeal." *Rodriguez-Leos*, 953 F.3d at 325 (cleaned up).

Indeed, Tyler's principal claim in the district court does not appear to be whether record evidence sufficiently supported the attribution of drugs other than methamphetamine to him. In other words, Tyler did not directly argue that he was being held responsible for drugs lacking an evidentiary basis for their inclusion as relevant conduct. Instead, his argument seemed to be whether the district court could consider narcotics alleged in the dismissed counts to find his Guidelines range and whether use of those drugs undermined the stipulated factual basis in which he admitted guilt only to possession with the intent to distribute methamphetamine.

Even still, Tyler asserted in his written objections to the PSR that he should not be held responsible for drugs other than methamphetamine because he did not reasonably know the scope of the conspiracy involving the other controlled substances. This written objection provided the district court with an opportunity to engage in a colloquy regarding its relevant

conduct analysis, but the court seemingly declined the invitation during his sentencing hearing.[3]

Tyler's written objection, and his argument on appeal, share the common root of questioning whether the district court properly considered relevant conduct in assessing his base offense level, rendering both propositions sufficiently similar in character for us to conclude that his objection has been preserved. Therefore, to prevail, Tyler must show that the district court committed a clear error that entitles him to resentencing.

## B.

The Sentencing Guidelines provide a "drug quantity table" in U.S.S.G. § 2D1.1 to establish the base offense level for most drug offenses. "Drugs used in calculating a defendant's base offense level include both those drugs in the distribution of which he was directly involved," and "drugs foreseeably distributed in furtherance of the conspiracy" as relevant conduct. *Rojas*, 812 F.3d at 412 (cleaned up); U.S.S.G. § 1B1.3(a)(1)(B). Relevant conduct broadly includes "all acts and omissions [that the defendant] committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" and which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A).

A participant in a drug trafficking conspiracy may be held responsible for "all quantities of contraband that were involved in transactions carried out by other participants, if those transactions were within the scope of, and

---

[3] When a defendant makes an objection in writing and the district court misconstrues that objection, "the error is nevertheless preserved for appeal." *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003).

in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, cmt. n.3(D). In drug distribution cases, quantities of drugs not specified in the count of conviction can be included in computing the base offense level if they were either "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019) (alteration in original) (internal quotations omitted) (quoting U.S.S.G. § 1B1.3(a)(2)).

Like all factual findings used in sentencing, relevant conduct must be proven by "a preponderance of the relevant and sufficiently reliable evidence." *United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013) (internal quotations omitted). If the court determines that the factual allegations of the PSR are sufficiently reliable, then "the 'defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it.'" *Zuniga*, 720 F.3d at 591 (quoting *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009)).

## C.

As both the plea agreement and PSR make clear, Tyler played an important role in the drug trafficking conspiracy. Indeed, according to the PSR, it is uncontested that Tyler conspired with others to distribute large quantities of narcotics on consignment, "*including heroin* and methamphetamine in south Louisiana." The relevant questions on appeal are how much of each substance can be proven by a preponderance of the evidence and whether other drugs can be properly attributed to him too.

The Government implies that Tyler could have reasonably foreseen that the conspiracy involved drugs other than methamphetamine given his role as a distributor and, therefore, can be held responsible for them as a

member of the drug trafficking conspiracy because he did not present evidence to rebut this determination. The Government also highlights Tyler's communications with Sinegal around the time the drug shipment from Mexico occurred as evidence that Tyler had broad awareness of the ring's narcotic transactions. On the other hand, Tyler concedes that "the record contains evidentiary support to attribute 260 grams of heroin" to him (presumably from the amount seized from Gant's residence), as well as the 500 grams of methamphetamine for which he pleaded guilty, but nothing more.[4] Therefore, according to Tyler, the converted drug weight for which he can be held responsible cannot justify the base offense level adopted by the district court.

After reviewing the record, we observe that the district court did not make any express findings regarding whether Tyler could have reasonably foreseen that the conspiracy involved fentanyl, heroin, cocaine, or a greater amount of methamphetamine than the PSR attributed to him. Similarly, few facts indicate that possession of these particular narcotics by others within the conspiracy was part of the same course of conduct or common scheme. Indeed, the only specific fact illuminating Tyler's connection to the conspiracy was his phone call with Sinegal discussing a particular shipment of drugs from Mexico, which raises more questions than provides answers

---

[4] The attribution of 260 grams of heroin to Tyler is presumably because a portion of the methamphetamine that led to Tyler's guilty plea likewise had been seized from Gant's home, but that fact is not clear from the record. We presume, without stating unequivocally, that an administrative panel of our court assumed the same by noting "[a]t most, the record contains evidentiary support to attribute 260 grams of heroin to Tyler." We are not bound as a merits panel, however, to adopt a ruling or determination by an earlier motions panel. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 704 (5th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

about the scope of his participation and his involvement with drugs other than methamphetamine.

It is reasonably likely that Tyler knew about the conspiracy's stash house as a member of the drug trafficking ring. Without deciding whether narcotics seized at this location could be reasonably attributed to him as relevant conduct, we note only that Tyler does not contest the attribution of 400 grams of fentanyl to him on appeal.[5] Therefore, we proceed as if the district court properly attributed this narcotic and the associated quantity to him in its analysis.

The other drug-weight attributions simply defy common sense. Oddly, a greater weight of heroin is attributed to Tyler (one kilogram) than had been seized by law enforcement (260 grams at Gant's residence). And aside from the fact that Tyler at one point faced a charge for conspiracy to possess and distribute cocaine, there is no record evidence whatsoever of this drug in the conspiracy.

The district court, nonetheless, adopted the PSR—including its converted drug weight analysis based on the designated amounts of methamphetamine, fentanyl, heroin, and even the unaccounted-for cocaine. Without a direct evidentiary objection, the district court merely acknowledged that the narcotics in the dismissed counts against Tyler (heroin, fentanyl, and cocaine) were broadly "connected to a crime to which a guilty plea has been entered" and reasoned they could be considered as relevant conduct without providing further explanation.

Based on Tyler's arguments and concessions, we assume without deciding that the district court properly attributed 260 grams of heroin and

---

[5] *See United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) (per curiam) (holding when an argument is not raised in appellant's brief, it is considered waived).

No. 23-30370

400 grams of fentanyl to him as relevant conduct within the drug conspiracy in which he participated.[6] This is in addition to at least 500 grams of methamphetamine Tyler pleaded guilty to possessing. But because the district court's relevant-conduct reasoning is far from apparent, we decline to speculate further as to the rationale behind its offense-level determination.[7] *United States v. Johnson*, 812 F. App'x 252, 253 (5th Cir. 2020) (per curiam) (citing *United States v. Zapata-Lara*, 615 F.3d 388, 391 (5th Cir. 2010)). As we have held before, "[t]he determination of the quantity of drugs is a sentencing issue necessary only to calculate a base offense level[] and is a factual determination for the [district] court to make." *United States v. Smith*, 13 F.3d 860, 864 (5th Cir. 1994). Based on the record before us, we therefore cannot conclude that Tyler could have reasonably foreseen the involvement of the entire amount of heroin or any of the cocaine attributed to him as relevant conduct within the conspiracy, or that those substances were part of the same course of conduct or common plan.

We can say, however, that the district court clearly erred. Even assuming 260 grams of heroin and 400 grams of fentanyl could be properly

_____

[6] Nonetheless, we reiterate that the record does not provide a clear evidentiary basis for attributing either 260 grams of heroin or 400 grams of fentanyl to Tyler. For example, the PSR offers no details as to how the 260 grams of heroin seized at Gant's house relates to, or is associated with, the defendant. Nonetheless, Tyler stipulated that "the record contains evidentiary support to attribute 260 grams of heroin to [him]." Similarly, although agents found approximately 1,000 grams of fentanyl in a stash house used by the drug ring in which Tyler was a member, the probation officer decided that there was no basis to attribute any specific amount to him and, for sentencing purposes, instead relied on the low-end of the quantity range alleged in the dismissed count of conspiracy to possess and distribute fentanyl. No additional facts regarding these narcotics were found.

[7] To affirm the district court's determination of Tyler's combined drug-weight responsibility, we would be required to make multiple assumptions given the undeveloped factual record. We decline to substitute our own speculation in place of the fact-finding function typically reserved for the district court. *See, e.g., United States v. Palacios*, Nos. 93-1445, 93 1617, 1995 WL 370742, at *10 (5th Cir. June 1, 1995).

attributed to Tyler, in addition to the assessed amount of methamphetamine, exclusion of the cocaine and the additional 740 grams of heroin would reduce the total converted drug weight to 2,260 kilograms. U.S.S.G. § 2D1.1, cmt. (n.8). A converted drug weight of 2,260 kilograms would lead to a base offense level of 30, *see* U.S.S.G. § 2D1.1(c)(5), and Tyler's total offense level would fall to 27 after applying the three-level reduction for acceptance of responsibility. Such a total offense level, combined with Tyler's criminal history category of VI, produces a Guidelines range of 130 to 162 months' imprisonment. *See* U.S.S.G. Ch. 5, Pt. A. In short, excluding the quantities of heroin and cocaine assigned to Tyler for which there is no evidentiary basis would subject the defendant to a lower Guidelines range than the one adopted by the district court. This constitutes a sentencing error.

## D.

Because we conclude that Tyler preserved his challenge to the sentencing error, the relevant inquiry subsequently becomes whether this error proved harmless. *See United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009). We consider a sentencing error harmless if the proponent of the sentence, which in this case is the Government, convincingly demonstrates "both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Alfaro*, 30 F.4th 514, 520 (5th Cir. 2022) (citation omitted). Establishing harmless error is a "heavy burden" that requires proving that the "sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *United States v. Ibarra-Luna*, 628 F.3d 712, 717, 719 (5th Cir. 2010). Evidence must demonstrate "that the district court had a particular sentence in mind and would have imposed it, notwithstanding [any] error." *Id.* at 718.

No. 23-30370

The Government suggests any error was harmless because the PSR "contains unrefuted facts establishing an amount of methamphetamine (19.94 kilograms) 'reasonably foreseeable' to Tyler that would result in an even higher guideline range following a hypothetical remand." But the evidentiary record presented to us suggests Tyler should be held responsible for less, and we make no assumptions—and see no "preponderance of the evidence"—as to why we should conclude that Tyler should be held accountable for exponentially more.

Relatedly, there is no indication the sentence imposed was unaffected by the erroneous Guidelines range. *See Delgado-Martinez*, 564 F.3d at 753. The Government has failed to show the district court would have imposed the same sentence regardless of the error it committed in calculating Tyler's Guidelines range or that the court had a specific sentence in mind that it would have imposed. *See Alfaro*, 30 F.4th at 520; *Ibarra-Luna*, 628 F.3d at 718.

Even though Tyler received a sentence of 162 months—a term at the highest end of his Guidelines range when the attributable quantity of heroin is reduced and the cocaine is excluded—the Government has not met its heavy burden of establishing harmless error. *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) ("When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.").

We therefore conclude that the district court's converted drug-weight analysis amounted to clear error that entitles Tyler to resentencing.

\* \* \*

14

No. 23-30370

Accordingly, we REVERSE and REMAND for additional proceedings consistent with this opinion.